**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

PEDRO JUAREZ, §
        *Plaintiff* §
§             SA-19-CV-01081-XR
-vs- §
§
WELLS FARGO BANK, N.A., §
        *Defendant* §
§

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's motion for summary judgment (docket no. 14), Plaintiffs' response (docket no. 15), and Defendant's reply (docket no. 16). After careful consideration, Defendant's motion is GRANTED.

## BACKGROUND

On August 30, 2019, Plaintiff Pedro Juarez filed suit against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in state court, asserting claims for breach of contract, wrongful foreclosure and expiration of the limitations period for foreclosure relating to the financing of his home located at 1942 W. Magnolia Avenue, San Antonio, Texas 78201 (the "Property"). Docket no. 15, Ex. 3 ¶¶ 7-11; Docket no. 14, Ex. A at 8-9. The state court issued an *ex parte* temporary restraining order ("TRO") on the same day, preventing a foreclosure sale scheduled for September 3, 2019. Docket no. 1, Ex. A at 13. On September 9, 2019, Defendant removed the case to this Court on the basis of diversity jurisdiction. Docket no. 1 ¶ 4.

This is Plaintiff's eighth time in court seeking to prevent the foreclosure of the Property.[1] Because the timing and details of Plaintiff's previous bankruptcies and lawsuits are relevant to Defendant's arguments concerning Plaintiff's limitations-based claim, the Court will briefly address each suit here.

### A.      Loan Origination, Modification and First Loan Acceleration (2012-2013)

On November 27, 2007, Plaintiff executed a purchase-money mortgage in the original principal amount of $92,000 (the "Loan"), which is secured by a promissory note (the "Note") and a deed of trust (the "Deed of Trust"). Docket no. 14, Ex. B at 1. The Note provides that failure to make the required monthly payments constitutes a default and would allow the mortgagee to accelerate the Note by requiring the unpaid balance to be paid immediately. Docket no. 14, Ex. A-1 at 4. The Deed of Trust similarly authorizes the acceleration of the maturity date, and also allows the mortgagee to foreclose on the Property, subject to certain notice requirements. Docket no. 14, Ex. B at 10-11.

After some deficiencies in payment, Wells Fargo and Plaintiff agreed to a loan modification (the "Loan Modification") that took effect on June 1, 2012. Docket no. 14, Ex. A-2 at 1. Plaintiff continued to struggle to make timely payments following the Loan Modification, and Wells Fargo sent Plaintiff multiple notices of default, dated August 16, 2012, October 5, 2012 and December 17, 2012 respectively, informing Plaintiff of his default and Wells Fargo's intent to accelerate the Loan and initiate the foreclosure process. Docket no. 14, Ex. A ¶ 6; Ex. A-3; Ex. A-4; Ex. A-5. After Plaintiff failed to cure his default, Wells Fargo accelerated[2] the Note and, on July 11, 2013, posted a Notice of Substitute Trustee Sale ("First Notice of Sale") publicizing a foreclosure sale of the Property scheduled for August 6, 2013. Docket no. 14, Ex. C. The 2013 foreclosure sale ultimately did not occur. Docket no. 14, Ex. A ¶ 7; Ex. C.

**B.     Plaintiff's Bankruptcies and Second Loan Acceleration (2015-2017)**

Beginning in 2015, Plaintiff filed a series of four bankruptcies. Plaintiff first filed for bankruptcy on August 3, 2015 (the "First Bankruptcy"). Docket no. 15, Ex. G at 1. The automatic stay was lifted as to Wells Fargo and the Property on November 9, 2015 (*id.* at 7-8), and Plaintiff's bankruptcy closed on December 4, 2015 (*id.* at 6).

Plaintiff filed a second bankruptcy (the "Second Bankruptcy") on December 29, 2015. Docket no. 15, Ex. H at 1. The Second Bankruptcy was dismissed on January 22, 2015 due to Plaintiff's failure to comply with the bankruptcy court's order to file a plan and schedules, and closed on March 2, 2016. *Id.* at 2; docket no. 15, Ex. 4.

On March 22, 2016, after the Second Bankruptcy closed, Wells Fargo sent a new notice of default and intent to accelerate (the "2016 Notice of Default") to both the address of the Property and Plaintiff's last-known address. Docket no. 14, Ex. D ¶ 4; Ex. D-1. The notice informed Plaintiff of his default for failure to make the required monthly payments and that Defendant would accelerate the Loan if the default was not cured within 30 days. Docket no. 14, Ex. D-1. On April 28, 2016, after Plaintiff failed to cure his default, Defendant mailed Plaintiff a second notice, this time informing Plaintiff that the Loan had been accelerated and the Property would be sold at a foreclosure sale scheduled for June 7, 2016. Docket no. 14, Ex. D at ¶ 5; Ex. D-2. The 2016 foreclosure sale did not occur. Docket no. 14, Ex. D at ¶ 5.

---

[1] The Court here takes judicial notice of the prior bankruptcies and lawsuits. *See Krystal One Acquisitions, LLC v. Bank of Am., N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020) (permitting district court to take judicial notice of filings from prior lawsuits because such documents were public records).

[2] The law firm that assisted Defendant with this sale no longer exists, and neither party has been able to locate the notice of acceleration and notice of sale mailed by foreclosure counsel prior to the scheduled August 3, 2013 sale. Docket no. 14, Ex. A ¶ 7. The parties agree, however, that, following the Loan Modification, the Loan was first accelerated in advance of the scheduled foreclosure sale. Docket no. 15, Ex. 1; docket no. 14, Ex. 1 at 3-4. **The Court will assume that acceleration occurred on July 11, 2013, the date of the First Notice of Sale.** Docket no. 14, Ex. C.

Plaintiff filed a third bankruptcy on October 31, 2016 (the "Third Bankruptcy"). Docket no. 14, Ex. I at 1. The Third Bankruptcy was summarily dismissed on November 22, 2016 and closed on January 31, 2017. *Id.* at 4; docket no. 15, Ex. 5.

On February 3, 2017, Plaintiff filed a fourth bankruptcy (the "Fourth Bankruptcy"). Docket no. 14, Ex. J at 1. The Fourth Bankruptcy was dismissed on February 27, 2017 and closed on May 10, 2017. *Id.* at 2; docket no. 15, Ex. 6.

### C.    Plaintiff's Lawsuits and 2019 Loan Acceleration (2017-2020)

Shortly before the close of his Fourth Bankruptcy, Plaintiff filed his first lawsuit against Wells Fargo on April 27, 2017 (the "First Lawsuit"),[3] and the state court granted an *ex parte* TRO preventing foreclosure of the Property. *See Juarez v. Wells Fargo Bank, N.A.*, No. 2017-CI-07742, 408th Judicial District Court, Bexar Cty., Tex. (2017). Plaintiff voluntarily dismissed the First Lawsuit on May 9, 2017. Nonsuit, *Juarez v. Wells Fargo Bank, N.A.*, No. 2017-CI-07742, 408th Judicial District Court, Bexar Cty., Tex. (May 9, 2017).

Plaintiff filed his second lawsuit in state court on July 31, 2017 (the "Second Lawsuit") and again obtained an *ex parte* TRO preventing the foreclosure sale of the Property scheduled for August 1, 2017. *Juarez v. Wells Fargo Bank*, N.A., No. SA-17-CA-756-FB-RBF, 2018 WL 835211, at *1 (W.D. Tex. Feb. 12, 2018). The Second Lawsuit was removed to federal court on August 10, 2017. *Id.* The case was dismissed pursuant to Rule 12(b)(6) on March 5, 2018. *Juarez v. Wells Fargo Bank, N.A.*, No. SA-17-CA-756-FB, 2018 WL 1895549 (W.D. Tex. Mar. 5, 2018) (adopting report and recommendation).

---

[3] Plaintiff actually filed two lawsuits against Wells Fargo in state court on April 27, 2020. Docket no. 14, Ex. E-2 at Resp. to Interrog. 12; *see also Juarez v. Wells Fargo Bank, N.A.*, No. 2017-CI-07743, 408th Judicial District Court, Bexar Cty., Tex. (2017). Given that both cases resulted in *ex parte* TROs and both were voluntarily dismissed on May 9, 2017, however, the Court will elect to treat these cases as a single action for the purposes of this Order. *Id.*

Plaintiff filed his third lawsuit against Wells Fargo in state court on April 20, 2018 (the "Third Lawsuit"), alleging breach of contract. *Juarez v. Wells Fargo Bank, N.A.*, No. 5:18-cv-475-DAE, 2019 WL 4061692, at *1 (W.D. Tex. June 18, 2019).  Plaintiff again obtained an *ex parte* TRO, preventing the foreclosure sale of the Property scheduled for May 1, 2018. *Id.* Wells Fargo removed the Third Lawsuit to federal court for proceedings before Judge Ezra on May 18, 2018. *Id.* Judge Ezra granted Wells Fargo's motion for summary judgment on June 18, 2019, concluding that Plaintiff's breach-of-contract claim failed as a matter of law because he could not show any evidence of damages as a result of the alleged breach, given that no foreclosure had occurred. *Juarez*, 2019 WL 4061692, at *4.

While the Third Lawsuit was pending, Wells Fargo rescinded any acceleration of the Loan on October 16, 2018 by mailing Plaintiff, and Plaintiff's then-counsel, a Rescission Notice of Acceleration (the "Rescission Notice"). *Id.*; docket no. 14, Ex. E ¶ 3; Ex. E-1. Then, on February 12, 2019, Wells Fargo mailed Plaintiff a new notice of default and intent to accelerate (the "2019 Notice of Default"). Docket no. 14, Ex. A ¶ 9; Ex. A-6.

On August 2, 2019, following the termination of the Third Lawsuit, Defendant sent Plaintiff a new notice of acceleration and sale through foreclosure counsel. Docket no. 14, Ex. F ¶ 4; Ex. F-1. The notice was mailed to the Property address as well as Plaintiff's last known address and informed Plaintiff that the Loan had been accelerated and the Property would be sold at a foreclosure on September 3, 2019. *Id.* Wells Fargo was unable to proceed with the scheduled foreclosure sale, however, because of the TRO issued by the state court in this case on August 30, 2019.

# DISCUSSION

## I.    Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.    Analysis

Defendant asserts that Plaintiff's claim for breach of contract cannot succeed because (1) there is no genuine issue of material fact that Wells Fargo provided proper pre-foreclosure notices in compliance with Texas law, and (2) Plaintiff cannot establish that he has suffered any damages as a result of the alleged breach because foreclosure has not occurred. Similarly, Plaintiff's claim for wrongful foreclosure fails because he is still in possession of the Property. Finally, Defendant argues that Plaintiff's claim that the statute of limitations for foreclosure has expired (1) is barred by res judicata, and (2) fails on the merits because Defendant abandoned acceleration prior to the alleged expiration of the limitations period, which created a new limitations period.

### A.    Breach of Contract

Plaintiff asserts that Defendant breached the provision of the Loan documents requiring Defendant to follow "applicable law" in the sale of the property. Docket no. 15, Ex. 3 ¶ 9(a).

7

Specifically, Plaintiff alleges that Defendant violated Section 28 of the Deed of Trust by attempting to sell the Property without providing proper notice of default and acceleration under Texas law. [4] *Id.* Defendant's February 12, 2019 notice of default and intent to accelerate ("2019 Notice of Default") was inadequate under Texas law, Plaintiff argues, because it was not "clear and unequivocal." Docket no. 15 at 12.

In Texas, a breach of contract claim requires: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the beach." *Cordero v. Avon Prods., Inc.*, 629 F. App'x 620, 623 (5th Cir. 2015) (internal quotations omitted); *Hovorka v. Cmty. Health Sys., Inc.*, 262 S.W.3d 503, 508–09 (Tex. App.—El Paso 2008, no pet.).

### 1. Plaintiff's Failure to Perform

Generally, "a party to a contract who is himself in default cannot maintain a suit for its breach." *Gulf Pipe Line Co. v. Nearen*, 138 S.W.2d 1065, 1068 (Tex. 1940); *Water Dynamics, Ltd v. HSBC Bank USA, N.A.*, 509 F. App'x 367, 369 (5th Cir. 2013) (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)). As Judge Ezra noted in Plaintiff's Third Lawsuit, however, the Fifth Circuit has recently recognized an exception to this general rule for terms that govern a lender's notice obligations following an event of default under a deed of trust. *Juarez*, 2019 WL 4061692, at *3 (citing *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018)). Because such notice obligations arise only *after* a breach of contract has already occurred, the notice provisions "would be rendered meaningless" if a lender's performance of "the notice

---

[4] Though the petition also alleges that Defendant did not provide a proper notice of acceleration, Plaintiff has not identified any improprieties in the notice of acceleration dated August 2, 2020. The Court will assume that Plaintiff intends to argue that the 2019 Notice of Acceleration was ineffective to the extent that it followed an improper notice of intent to accelerate. *See Ogden v. Gibralter Savings, Ass'n*, 640 S.W. 2d 232-34 (Tex. 1982) ("Notice that the debt has been accelerated . . . is ineffective unless preceded by proper notice of intent to accelerate.")

obligation was excused any time the borrower was in default." *Id.* Such a reading would be contrary to Texas law, which requires courts to "attempt to give effect to all contract provisions so that none will be rendered meaningless." *Williams*, 884 F.3d at 245 (quoting *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). Thus, a lender's obligation to provide adequate notices before foreclosure is "independent of the borrower's obligation to make payments." *Juarez*, 2019 WL 4061692, at *3.

Plaintiff's failure to perform his obligations under the Deed of Trust is not in dispute. Indeed, Plaintiff acknowledges that he has not made any payments on the Loan since approximately September 2012. *See* Docket no. 14, Ex. E-2 at Resp. to Interrog. 9. To excuse Defendant's notice obligations based on Plaintiff's breach, however, would deprive the notice provisions in the Deed of Trust of any meaning because the duty to provide a notice of default in compliance with "Applicable Law" only arises when Plaintiff is in default. Such an interpretation would be inconsistent with Texas law. *Williams*, 884 F.3d at 245. Thus, despite Plaintiff's default, Defendant was still obligated to provide Plaintiff with proper notice before initiating foreclosure, and Plaintiff's default does not defeat his breach of contract claim.[5]

### 2.  Defendant's Alleged Breach of Contract

In Texas, proper acceleration of a note requires a lender to "make demand for payment, give the debtor an opportunity to cure the default, give clear and unequivocal notice of the intent to accelerate, and, in the event that there is no timely cure, give clear and unequivocal notice that it has, in fact, accelerated the debt." *Bastien v. HSBC Bank USA, N.A.*, No. G-13-110, 2013 WL 12100745, at *2 (S.D. Tex. Nov. 27, 2013) (citing *Ogden v. Gibralter Savings, Ass'n*, 640 S.W. 2d 232-34 (Tex. 1982)). A lender may combine the "written notice of default, the right to cure,

---

[5] Defendant does not contend that Plaintiff's breach excuses its notice obligations under the Deed of Trust, but the Court addresses the argument here for the sake of clarity and completeness.

and the intent to accelerate in a single document*." Satterthwaite v. First Bank Mortgage, N.A.*, No. 4:18-CV-884-ALM-CAN, 2019 WL 5703455, at *5 (E.D. Tex. Oct. 15, 2019) (citing *Bastien*, 2013 WL 12100745, at *2) ("[I]t is certainly permissible to do all three in a single document."). The notice that acceleration has occurred and notice of a foreclosure sale may likewise be included in the same document. *Id.* (citing *Walker v. BAC Home Loans Servicing, LP*, No. G–11–525, 2014 WL 2863758, at *1 (S.D. Tex. June 24, 2014)). The notice of intent to accelerate and the notice of acceleration, however, must be provided separately and in the proper sequence. *Id.* (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)). "Both notices must be 'clear and unequivocal.'" *Holy Cross*, 44 S.W.3d at 566 (quoting *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991)). An effective notice of default and intent to accelerate must "bring home to the mortgagor that failure to cure will result in acceleration." *Ogden*, 640 S.W. 2d at 233. A notice that simply restates a lender's option to accelerate is insufficient. *See id.* at 233-34 (holding that a notice that the borrower's default "*may* result in acceleration" was ineffective because it did not give clear and unequivocal notice that [the lender] *would* exercise the option.") (second emphasis added).

Here, the 2019 Notice of Default leaves no doubt that Wells Fargo intended to accelerate the Note. The letter clearly states the consequences of a failure to cure the default: "If we don't receive the payment on or before March 21, 2019, we *will* require the immediate payment of your loan in full. This is called 'accelerating' your loan." Docket no. 14, Ex. A-6 (emphasis added). Though this statement is itself sufficient to "bring home to the mortgagor that failure to cure will result in acceleration," *Ogden*, 640 S.W. 2d at 233, the notice later repeats the warning that "failure to pay the total past due amount on or before March 21, 2019 *will result* in the acceleration of the sums of the security instrument and the sale of the property." Docket no. 14, Ex. A-6 (emphasis

10

added). *See Cordoba v. HSBC Bank*, No. 7:13-cv-156, 2014 WL 12600071, at *2-3 (S.D. Tex.

July 15, 2014) ("The clear language of this notice ('we will proceed with acceleration') meets the

level of clarity which Texas law requires [for notices of intent to accelerate].").

Without explanation or citation to a single authority, Plaintiff asserts that the language in

the letter summarizing Plaintiff's post-acceleration rights (under the separate heading "Required

information about the foreclosure process") renders the notice defective:

> You also have the right to reinstate after your loan has been accelerated.
> This means your note and mortgage or deed of trust will remain fully effective as
> if acceleration had never been required and you can resume making your regular
> loan payments. If your loan is accelerated, please understand that at that time we
> must receive the full reinstatement amount due to reinstate your mortgage and note
> or deed of trust.

Docket no. 15 at 4-5; docket no. 14, Ex. A-6. Texas law clearly permits lenders to combine notice

of a borrower's legal rights with a notice of default and acceleration. *See Satterthwaite*, 2019 WL

5703455, at *5 (noting that notice of plaintiff's right to cure the default could be included in the

same document as the notice of default and intent to accelerate). Though notice of the right to

reinstate after acceleration is not required by Texas law, such notice is commonly included with

notices of default and intent to accelerate because it is required by the underlying security

instrument. *See Casalicchio v. BOKF, N.A.*, 951 F.3d 672, 677 (5th Cir. 2020) (citing *Jasper*

*Federal Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672 (Tex. 1987)); *MMM 410 Bar & Grill, LLC*

*v. Fong*, No. 04-18-00156-CV, 2018 WL 5018767, at *2 (Tex. App.—San Antonio 2018, no pet.)

("the deed of trust required that the notice inform the [plaintiffs] of their right to reinstate after

acceleration."). As Defendant notes, rather than create doubt about the possibility of acceleration,

the description of Plaintiff's right to reinstate after acceleration "underscores that acceleration is

imminent and reinforces that Wells Fargo's intent is to accelerate the Loan if the default is not

cured." Docket no. 16 at 7-8. Accordingly, Plaintiff's breach-of-contact claim cannot survive

because no reasonable trier of fact could find that the 2019 Notice of Default failed to provide "clear and unequivocal" notice of Defendant's intent to accelerate in compliance with "applicable law."

### 3. Damages

Even assuming that the 2019 Notice of Default was in some way defective, the Court still finds that Plaintiff's breach-of-contract claim fails because he cannot establish damages sustained as a result of the alleged breach, the fourth and final element of a breach-of-contract claim. *Hovorka*, 262 S.W.2d at 508–09.

Plaintiff asserts that he has suffered damages in the form of loss of equity in the home and loss of payments to Wells Fargo.[6] Docket no. 15, Ex. 3 ¶ 12(c)-(d). These losses cannot be supported, logically or legally, unless foreclosure has occurred. *See De La Mora v. CitiMortgage, Inc.*, No. 7:17-CV-468, 2015 WL 12803712, at *2 (S.D. Tex. Jan. 26, 2015) ("Plaintiff cannot show damages resulting from any such breach because no foreclosure sale has occurred."); *Maldonado v. Bank of Am.*, No. SA-12-CA-442-FB, 2013 WL 12108679, at *3 (W.D. Tex. June 14, 2013) (holding that breach-of-contract claim damages based on lack of notice of default and opportunity to cure could not stand where the foreclosure sale did not actually occur); *Peoples v. BAC Home Loans Servicing, LP*, No. 4:10-CV-489-A, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011) (holding mortgagor did not have a valid claim for breach-of-contract damages because the foreclosure had not occurred).

---

[6] The petition indicates that Plaintiff also seeks to recover for past and future mental anguish (docket no. 15, Ex. 3 ¶ 12(a)-(b)). Plaintiff has failed to set forth any facts to support such damages, however, *see* docket no. 14, Ex. E-2 at Resp. to Interrogs. 16-17, and the Court will not assume in the absence of proof that they exist. Further, to the extent Plaintiff argues that the attorneys' fees spent forestalling the foreclosure suffice as damages, such fees from prosecuting a breach-of-contract claim cannot serve as the sole basis for damages for such a claim. *Haubold v. Med. Carbon Res. Inst., LLC*, No. 03-11-115-cv, 2014 WL 1018008, at *5–6 (Tex. App.—Austin 2014, no pet.).

It is undisputed that no foreclosure has occurred in this case. Thus, Plaintiff cannot show any economic damages from the alleged deficiencies in the notice of default. Plaintiff argues that because the TRO issued by the state court has expired, he "could" suffer damages "should the property be sold by the time of trial." Docket no. 15 at 5. However, "[a] party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural." *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 278 (5th Cir. 2009) (citing *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex. App.—Dallas 1996, no writ)). In granting summary judgment for Wells Fargo in the Third Lawsuit, Judge Ezra identified the same fatal deficiency in Plaintiff's previous breach-of-contract claim. *Juarez*, 2019 WL 4061692, at *4 ("Considering Plaintiff has not presented any evidence of any damages—an essential element of a valid breach of contract claim under Texas law—a reasonable jury could not return a verdict for Plaintiff, and Defendant is therefore entitled to summary judgment.")

Accordingly, Plaintiff's breach-of-contract claim fails as a matter of law because there is no genuine issue of material fact that Defendant provided adequate notice before initiating foreclosure and because Plaintiff has not shown any damages.

### B.    Wrongful Foreclosure

Plaintiff also asserts a claim for wrongful foreclosure, alleging that Defendant failed to comply with certain statutory notice requirements under Section 51.002 of the Texas Property Code before initiating foreclosure proceedings. Docket no. 15, Ex. 3 ¶ 10. Defendant argues that Plaintiff's claim for wrongful foreclosure must fail because the Property has not been sold. Docket no. 14 at 10.

In Texas, a claim for wrongful foreclosure requires a plaintiff to show: (1) a defect in the foreclosure proceedings; (2) a grossly inadequate selling price; and (3) a causal connection

between the defect and grossly inadequate selling price. *Foster v. Deutsche Bank Nat'l Trust Co.*, 848 F.3d 403, 406 (5th Cir. 2017). A wrongful foreclosure claim cannot survive if the party asserting the claim never lost the property in question. *Id.* (citing *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1007 (S.D. Tex. 2011) (reasoning that recovery is premised on lack of possession of the subject property)); *see also Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013) ("No sale took place here, as the state court granted an injunction to prevent the sale of the house. Without a sale of the house, there can be no viable wrongful foreclosure claim under Texas law."). As such, Texas courts do not recognize an action for attempted or anticipatory wrongful foreclosure. *See Motten*, 831 F. Supp. 2d at 1007.

The Court agrees with Defendant that Plaintiff's claim for wrongful foreclosure cannot succeed. The record demonstrates that Plaintiff was able to obtain a TRO in state court to temporarily enjoin the foreclosure of the Property. Docket no. 1, Ex. A at 13-14. Indeed, it is undisputed that foreclosure has not yet occurred, and Plaintiff remains in possession of the Property. *See* docket no. 14, Ex. E-2 at Resp. to Interrog. 14 ("Foreclosure sale has not occurred."); *id.* at Resp. to Req. for Admis. Nos. 14-15. Accordingly, Plaintiff's wrongful foreclosure claim must fail as a matter of law because there has been no foreclosure.

### C.   Expiration of the Statute of Limitations for Foreclosure

Under Texas law, "[a] person must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues". TEX. CIV. PRAC. & REM. CODE § 16.035(a). A cause of action accrues on the maturity date of the last note, obligation, or installment. *Id.* § 16.035(e). Accordingly, where a security instrument contains an optional acceleration clause, "a cause of action accrues and the four-year statute of limitations period begins to run when the note holder exercises its option to accelerate a debt." *Jorrie v. Bank of New York*

*Mellon Trust Co., N.A.*, 2017 WL 6403054, at *6 (W.D. Tex. Sept. 11, 2017) (citing *Holy Cross*, 44 S.W.3d at 566). If foreclosure does not occur within this limitations period, "the real property lien and a power of sale to enforce the . . . lien become void". Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 16.035(d).

The statute of limitations for foreclosure can be tolled by statutory and equitable measures. *See id*. § 16.035(c) (providing for tolling in the event of the borrower's death or a written, recorded agreement to extend the maturity date); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991). "As a general rule, 'where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time in which he is thus prevented should not be counted against him in determining whether limitations have barred his right.' " *Jorrie*, 2017 WL 6403054, at *6 (quoting *Hughes*, 821 S.W.2d at 157). It follows that "when a claimant is prohibited from bringing suit by the Bankruptcy Code's automatic-stay provision, the statute of limitations is tolled until the stay is lifted*." Peterson v. Tex. Commerce Bank-Austin, N.A.*, 844 S.W.2d 291, 294 (Tex. App.—Austin 1992, no writ); *see also* 11 U.S.C. § 362(a). "Texas courts addressing the issue of the automatic stay on foreclosure suits have held that '[t]he automatic stay provided by [s]ection 362 remains in effect until the bankruptcy proceeding is concluded'—that is, until the case is closed or discharge is granted." *Jorrie*, 2017 WL 6403054, at *6 (quoting *Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770, 779 (Tex. App.—Corpus Christi-Edinburg 1998, pet. denied) (alteration in original); *see also Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 523 (Tex. App.—Texarkana 1993, writ denied).

Defendant raises two separate challenges to Plaintiff's limitations-based claim. First, Defendant argues that the claim is barred by res judicata, or claim preclusion, because it should have been raised during the Third Lawsuit. Docket no. 14 at 12-14. Defendant also argues that

15

Plaintiff's claim fails substantively because it does not account for Wells Fargo's abandonment of acceleration in 2016 and rescission of acceleration in 2018, each of which reset the limitations period. *Id.* at 15-16. The Court will address each argument in turn.

### 1. Claim Preclusion

The doctrine of res judicata contemplates, at minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983). For a claim to be barred on res judicata grounds, the Fifth Circuit requires that: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). When those elements are satisfied, res judicata "prohibits either party from raising any claim or defense in the later action that was or *could have been* raised in support of or in opposition to the cause of action asserted in the prior action." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (emphasis in original); *see also In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 861 F.2d 814, 816 (5th Cir. 1988) ("Res judicata extends to matters that should have been raised in the earlier suit as well as those that were.").

As to the last element—whether the same claim or cause of action was involved in both actions—courts apply a "transactional test, which requires that the two actions be based on the same nucleus of operative facts." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009) (internal citations omitted). Under that transactional test, a prior judgment's preclusive effect extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-*

*Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). Additionally, the doctrine "extends beyond claims that were actually raised and bars all claims that 'could have been advanced in support of the cause of action on the occasion of its former adjudication….'" *Maxwell v. U.S. Bank, N.A.*, 544 F. App'x 470, 472 (5th Cir. 2013) (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)).

The parties do not dispute that (1) the parties are identical or that (2) the judgment in the prior action was rendered by a court of competent jurisdiction. Plaintiff purports to dispute the finality of the prior judgment because the previous lawsuit involved different claims, docket no. 15 at 6, but his argument simply conflates the question of finality with the question of whether both actions involve the same claims. Judge Ezra's order granting summary judgment in the Third Lawsuit was unquestionably a final judgment on the merits. *See Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) ("Summary judgment . . . is the procedural equivalent of a trial and is an adjudication of the claim on the merits."). Thus, only the final condition of res judicata—whether both suits involve the same cause of action—is actually in dispute.

The question is whether Plaintiff could have advanced a claim that the statute of limitations for foreclosure had expired when he filed the prior action on April 30, 2018. If the nucleus of operative facts from which the limitations claim arises existed at the time Plaintiff filed the Third Lawsuit, the claim is barred by res judicata.

In their various filings, the parties set forth a series of competing interpretations of the same timeline of events. Plaintiff asserts that the limitations period commenced upon the first acceleration of the loan following the Loan Modification. Docket no. 15 at 9-10. It is unclear when

acceleration actually occurred because neither party has been able to locate the notice of acceleration issued in advance of the foreclosure sale scheduled for August 3, 2013. *Id.*; *see also supra* note 2. The Court will assume that acceleration occurred on July 11, 2013, the date of the First Notice of Sale. *See McLemore v. Pacific Southwest Bank, FSB*, 872 S.W.2d 286, 292 (Tex. App.—Texarkana 1994, writ dism'd) ("[W]e may reasonably infer that a notice of intent to accelerate followed by a notice of a trustee's sale constitutes a notice of acceleration."). Such an assumption is generally permitted under Texas law and, in the context of this motion for summary judgment, likely required by federal law, given the mandate to review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co.*, 555 F.3d at 181. Before accounting for any equitable tolling, then, the statute of limitations for foreclosure would have expired on July 11, 2017, four years after acceleration.

Equitable tolling of the statute of limitations is appropriate here because Plaintiff's earlier legal proceedings prevented Wells Fargo from exercising its legal remedies. The parties present different theories of the tolling effect of Plaintiff's previous bankruptcies and lawsuits, but both parties conclude that the earlier proceedings tolled the statute of limitations on foreclosure for a total of at least 354 days.[7] Docket no. 14 at 15; docket no. 15 at 8. By these calculations, the foreclosure remedy would not have expired until June 30, 2018, two months after Plaintiff filed the Third Lawsuit. Thus, Plaintiff's statute-of-limitations claim does not arise from the "same nucleus of operative facts" that served as the basis for the prior action. Viewing the facts in the

---

[7] Defendant contends that the statute of limitations was tolled from the date of each bankruptcy filing until the stay was lifted or the case was closed, for a total of *354 days*. Docket no. 14 at 15. Plaintiff argues that the automatic stay tolled the limitations period from the date of each bankruptcy filing until the stay was lifted or the case was *dismissed*, for a total of 179 days. Docket no. 15 at 10. However, Plaintiff's calculations also include another 229 days of tolling during the pendency of his first two lawsuits, for a total of *398 days*. *Id.* at 8. The Court's conclusion—that res judicata does not bar Plaintiff's limitations claim—does not depend on which tolling theory prevails, and thus the Court will not address the merits of the parties' calculations.

light most favorable to the Plaintiff, the Court finds that Plaintiff's statute-of-limitations claim was not ripe when Plaintiff filed the Third Lawsuit and thus is not barred by claim preclusion.

Whether the doctrine of res judicata bars Plaintiff's limitations-based claim is ultimately immaterial, however, because the statute of limitations for foreclosure has not expired. Even if Plaintiff had alleged in the Third Lawsuit that the statute of limitations had expired, the claim would have failed on its merits because it fails to account for Defendant's abandonment of acceleration in 2016 and 2018.

### 2. Abandonment and Rescission of Acceleration

In Texas, a lender may unilaterally abandon acceleration "by requesting payment on less than the full amount of the loan," which amounts to a waiver of the lender's earlier option to accelerate. *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015). "If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 679 (5th Cir. 2015) (citing *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston 2012, no pet.)). When a lender "unequivocally manifest[s] an intent to abandon acceleration," the "statute of limitations period under § 16.035(a) cease[s] to run" and a new limitations period will not begin to accrue until the borrower defaults again and the lender again elects to accelerate the loan. *Id.* "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross*, 44 S.W.3d at 566. A notice of abandonment need not satisfy the requirements for acceleration to stop the limitations period from running. *King v. Select Portfolio Servicing, Inc.*, 740 F. App'x. 814, 818–19 (5th Cir. 2018) ("Even if [the notice] was inadequate to support a new

declaration of default because it did not give the borrower 30 days to respond to the offer, that shortcoming has no effect on its clear declaration of abandonment of the prior acceleration.").

Assuming that the first acceleration of the loan following the 2012 Loan Modification occurred on July 11, 2013, the summary judgment evidence establishes that Wells Fargo effectively abandoned that acceleration on March 22, 2016, less than four years after the first acceleration. Docket no. 14, Ex. D ¶ 4; Ex. D-1. Plaintiff asserts that the abandonment was ineffective, however, because the 2016 Notice of Default was not "clear and unequivocal" in its assertion that Wells Fargo would accelerate should Plaintiff fail to cure the default. Docket no. 15 at 11-12. Just as he did in his breach-of-contract claim, Plaintiff challenges the sufficiency of the 2016 Notice of Default by reference to the language summarizing his post-acceleration rights. *Id.* Plaintiff's argument fails here for the same reason that it failed with respect to the 2019 Notice of Default at issue in his breach-of-contract claim. The notice clearly states that if the default is not cured within 30 days, "the maturity date of the Note *will be* accelerated and all sums secured by the Deed of Trust *will be* declared to be immediately due and payable." Docket no. 14, Ex. D ¶ 4; Ex. D-1 (emphasis added). By notifying Plaintiff that acceleration was imminent, Wells Fargo unequivocally manifested an intent to abandon the ongoing acceleration of the maturity date and the statute of limitations ceased to run. The new limitations period did not begin to accrue until Wells Fargo sent Plaintiff a new notice of acceleration on April 28, 2016, less than four years before Plaintiff filed the instant lawsuit. Docket no. 14, Ex. D ¶ 5; Ex. D-2.

Plaintiff contends that Wells Fargo's Rescission Notice, dated October 16, 2018 and served on Plaintiff during the pendency of the Third Lawsuit, was ineffective because the statute of limitations had already expired. Docket no. 15, Ex. 3 ¶ 1. The new limitations period created by the notice of acceleration dated April 28, 2016 had plainly not expired when, less than three years

20

later, Defendant mailed Plaintiff the Rescission Notice. Plaintiff further asserts that the rescission was invalid because he did not receive a copy of the Rescission Notice at his address as Texas law requires. Docket no. 15, Ex. 3 ¶ 1 (citing TEX. CIV. PRAC. & REM. CODE § 16.038(c)). We reject Plaintiff's argument because (1) rescission of acceleration under § 16.038(c) is effective upon written notice by first class or certified mail, irrespective of the borrower's actual receipt of the notice, (2) Plaintiff had actual notice of the rescission during the Third Lawsuit, *Juarez*, 2019 WL 4061692, at *1, and (3) the summary judgment record establishes that Plaintiff did in fact receive the Rescission Notice. Counsel for Wells Fargo sent the Rescission Notice by first class and certified mail to the Property address and Plaintiff's last-known address, in compliance with the statutory requirements for service. Docket no. 14, Ex. E ¶ 3; Ex. E-1; *see* TEX. CIV. PRAC. & REM. CODE § 16.038(c). Tracking information and green card receipts maintained by the United States Postal Service further indicate that both certified letters were delivered and signed for. Docket no. 14, Ex. E ¶ 4; Ex. E-1 at 2-7. The effective rescission of acceleration in October 2018 terminated the previous limitations period. The most recent limitations period did not begin to accrue until Wells Fargo sent Plaintiff a new notice of acceleration on August 2, 2019.

The summary judgment record demonstrates that Plaintiff's limitations argument is without merit because Wells Fargo rescinded or abandoned earlier acceleration notices, rendering the foreclosure sale scheduled for September 3, 2019 timely. Accordingly, no genuine issue of material facts exists as to limitations; the statute of limitations has not expired.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (docket no. 14) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff. Plaintiff shall take nothing by his claims and his claims are dismissed with prejudice.

This is Plaintiff's fourth lawsuit and his eighth time in court in the past five years seeking to prevent the foreclosure of the Property. Through a series of flawed bankruptcy filings and meritless lawsuits, Plaintiff has managed to remain in possession of the Property despite his failure to make a single mortgage payment for the better part of a decade. Plaintiff, and his present and future counsel, if any, are **ADVISED** that further attempts to delay foreclosure proceedings through such repetitive, frivolous, and abusive litigation could and likely will be met with sanctions.

It is so **ORDERED**.

**SIGNED** this 23rd day of September, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE